UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILMINGTON TRUST COMPANY, et al., | CASE NO. C20-0402-RSM-MAT |
| Plaintiffs, | |
| v. | REPORT AND RECOMMENDATION |
| THE BOEING COMPANY, et al., | |
| Defendants. | |

INTRODUCTION

This matter comes before the Court on a Motion to Remand to State Court (Dkt. 17) filed by plaintiffs Wilmington Trust Company, as Owner Trustee ("WTC"), F & L Aviation IV, LLC, as Beneficial Owner of aircraft bearing manufacturer's serial number 61329 (F&L), and Brilliant Aviation Limited, owner and operator of aircraft bearing manufacturer's serial number 62743 ("Brilliant"). Named defendants The Boeing Company ("Boeing") and Boeing Commercial Airlines ("BCA"), a division of Boeing, oppose the motion. (Dkt. 21.) The Court, having considered the briefing and declarations filed in support and opposition, concludes plaintiffs' motion to remand (Dkt. 17) should be DENIED.

REPORT AND RECOMMENDATION
PAGE - 1

PROCEDURAL BACKGROUND

Plaintiffs initiated their lawsuit by filing a complaint in King County Superior Court alleging defendants sold them defective 737 MAX aircraft and seeking damages for negligent and dangerous design decisions and misrepresentations. (Dkt. 1-2.) Defendants removed the matter to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (Dkt. 1.) Defendants based removal on complete diversity between the parties – with Brilliant as a citizen of the Cayman Islands, F&L as a citizen of Nevada, and Boeing as a citizen of Delaware and Illinois – and an amount in controversy exceeding $75,000. Defendants assert WTC's status as merely an "Owner Trustee" of one of the airplanes at issue meant its citizenship was disregarded for purposes of diversity jurisdiction, *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 465 (1980), and that BCA is not a properly named defendant because it is merely a division of Boeing and not a separate legal entity.

Plaintiffs move to remand to state court pursuant to 28 U.S.C. § 1447(c). Plaintiffs concede WTC is a disregarded entity for purposes of diversity jurisdiction, but argue Boeing and BCA are not eligible to remove due to the "resident defendant rule" in 28 U.S.C. § 1441(b)(2). Plaintiffs maintain that, despite establishing a remote headquarters in Chicago, Illinois in 2001, Boeing's principal place of business remains in Seattle, Washington. They argue identification of BCA as a "division" rather than a "subsidiary" should not allow Boeing to evade this rule.

FACTUAL BACKGROUND

Boeing began its operations in the State of Washington in 1916 and has been incorporated in the State of Delaware since 1934. (*See* Dkt. 17 at 2; Dkt. 22 (Decl. of Koji Torihara), ¶2.) In 2001, Boeing moved its corporate headquarters from Seattle to Chicago. (Dkt. 22, ¶23.)[1] As set

---

[1] This move is documented in both articles at the time of the change, *see, e.g.*, "Boeing to move headquarters out of Seattle; manufacturing jobs to stay", Seattle Times, March 22, 2001,

forth on its public website: "With corporate offices in Chicago, Boeing employs more than 153,000 people across the United States and in more than 65 countries[.]" *See* "Boeing in Brief", *available at* https://www.boeing.com/company/general-info/. The website also states: "Boeing is organized into three business units: Commercial Airplanes [(BCA)]; Defense, Space & Security [(BDS)]; and Boeing Global Services [(BGS)], which began operations July 1, 2017." *Id*. Boeing Capitol Corporation, a wholly owned subsidiary of Boeing, supports the business units and provides financing to Boeing customers. *Id*.; (Dkt. 22, ¶16.)

Boeing's office in Chicago is located at 100 North Riverside Plaza, and employs some 500 individuals. (Dkt. 22, ¶5.) Boeing's public filings with the Securities and Exchange Commission (SEC) and its official filing with the Washington Secretary of State's Corporations and Charities Filing System identifies this Chicago address as, respectively, Boeing's "Corporate Headquarters"/"principal executive offices" and Boeing's "Principal Office Street Address." (*Id*., ¶¶6, 8 (citations omitted) and Ex. A.) Boeing's corporate bylaws identify Chicago as the location of the "Corporation's executive offices" and direct all notices from shareholders to the company be sent to that location. (*Id*., ¶7 (citation omitted).) Boeing attests that it holds its Annual Meeting of Shareholders, maintains its corporate books and records, and prepares its SEC filings in Chicago. (*Id*., ¶¶9-10 (citations omitted).)

BCA operates Boeing's commercial airplanes business, is based in Renton, Washington, includes major manufacturing locations in Washington, South Carolina, Utah, and Montana, and

---

*available at* https://archive.seattletimes.com/archive/ ?date=20010322&slug=boeingmain22); "Boeing's new headquarters: Chicago", Seattle Times, May 10, 2001, *available at* https://archive.seattletimes.com/archive/?date=20010510&slug=boeingweb10)); "Boeing, Jolting Seattle, Will Move Headquarters", New York Times, March 22, 2001, *available at* https://www.nytimes.com/2001/03/22/us/boeing-jolting-seattle-will-move-headquarters.html), and more recently (*see* Dkt. 22, ¶23, n.15).

REPORT AND RECOMMENDATION
PAGE - 3

employs more than 60,000 individuals. (*Id*., ¶17.) The three primary Washington BCA facilities are located in Seattle, Renton, and Everett. BDA operates Boeing's defense and space businesses, is based in Arlington, Virginia, includes major manufacturing facilities in Missouri, Pennsylvania, Arizona, and California, and employs some 37,000 individuals. (*Id*., ¶18.) BGS operates Boeing's aftermarket services business, is based in Plano, Texas, and employs some 23,500 individuals. (*Id*., ¶19.) Neither BCA, BDS, nor BGS is a separately incorporated entity. (*Id*., ¶20.) BCA, BDS, and BGS each have separate Presidents and CEOs, based, respectively, in Renton, Arlington, and Plano. (*Id*., ¶21.) In 2019, BCA generated revenue of $32.3 billion, while BDS generated $26.2 billion, and BGS generated $18.5 billion; and, in 2018, BCA generated revenue of $57.5 billion, while BDS generated $26.4 billion, and BGS generated $17.1 billion. (*Id*., ¶22 (citations omitted).)

Boeing attests that David Calhoun, Boeing's President and CEO, Greg Smith, Boeing's CFO and Executive Vice President of Enterprise Performance & Strategy, and Brett Gerry, Senior Vice President and General Counsel, among others, are based in Chicago (*Id*., ¶13), while plaintiffs assert records show Calhoun as a resident of New Hampshire and Gerry as a resident of Washington State (Dkt. 18 (Dec. of David Shoeggl), ¶3 and Ex. A). Calhoun leads Boeing's "Executive Council", a group that makes "high-level strategic decisions" for Boeing and is comprised of Calhoun and thirteen other senior executives, including the senior leaders of BCA, BDS, and BGS. (Dkt. 22, ¶13.) Boeing identifies six Executive Council members as based in Chicago (including Calhoun and Gerry), one in Renton, two in Seattle, and the remainder in Plano and Arlington, one of whom also has an office in London, England. (*Id*.) Plaintiffs provide a comparison of Boeing and BCA senior executives by their states of residence, contending twenty-two of those individuals are Washington residents (eighteen associated with BCA and four with

Boeing), five are Illinois residents, and seven are residents of other states. (*See* Dkt. 18, ¶3 and Ex. A.)[2]

Boeing's Board of Directors is comprised of twelve individuals, including Calhoun. https://www.boeing.com/company/general-info/corporate-governance.page#/directors. Plaintiffs' search of records indicates two board members reside in Illinois, while the remainder reside in Florida, California, New Hampshire, North Carolina, New York, Virginia, and Maryland. (Dkt. 18, ¶4.)

## DISCUSSION

This Court has jurisdiction over "civil actions where the matter in controversy exceeds the sum or value of $75,000" and where the matter is between citizens of different states. 28 U.S.C. § 1332(a). A removal to federal court based on diversity of citizenship requires there be no defendant who is a citizen of the forum state. *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 939 (9th Cir. 2006). That is, "[a] civil action otherwise removable solely on the basis" of diversity of citizenship "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

The Court must "strictly construe the removal statute against removal jurisdiction," so that any doubt as to the right of removal is resolved in favor of remanding the case to state court. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). As such, the removing party bears the burden to demonstrate removal was proper. *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010) (citing *Gaus*, 980 F.2d at 567); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988).

---

[2] Plaintiffs omit executives from BDS, BGS, and Boeing Capital Corporation. (*See* Dkt. 18, ¶3.)

REPORT AND RECOMMENDATION
PAGE - 5

For purposes of diversity jurisdiction under 28 U.S.C. § 1332(c)(1), a corporation is a citizen of its state of incorporation and of the state where its principal place of business is located. In *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010), the Supreme Court adopted a uniform approach to determining a corporation's "principal place of business" under 28 U.S.C. § 1332(c)(1). The Court held that a corporation's principal place of business, or "nerve center," is "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Id*. at 80, 92-93. In so doing, the Court recognized that, "[p]erhaps because corporations come in many different forms, involve many different kinds of business activities, and locate offices and plants for different reasons in different ways in different regions, a general 'business activities' approach" to determining a corporation's principal place of business had "proved unusually difficult to apply." *Id*. at 90-91.

As set forth in *Hertz*, the nerve center "should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination . . . and not simply an office where the corporation holds its board meetings." *Id*. at 93. The nerve center "is a single place." *Id*. "The public often (though not always) considers it the corporation's main place of business." *Id*. The nerve center is also a single "place within a State[,]" not the State itself. *Id*. (noting courts previously and incorrectly looked "at the State itself, measuring the total amount of business activities" conducted there and "determining whether they are 'significantly larger' than in the next-ranking State.") The nerve center test looks to the "center of overall direction, control, and coordination[,]" and "[c]ourts do not have to try to weigh corporate functions, assets, or revenues different in kind, one from the other." *Id*. at 96.

The party asserting diversity jurisdiction has the burden of persuasion. *Id*. "When challenged on allegations of jurisdictional facts, the parties must support their allegations by

REPORT AND RECOMMENDATION
PAGE - 6

competent proof." *Id*. at 96-97 (citations omitted).  Where the record reveals an attempt at manipulation, such as where "the alleged 'nerve center' is nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat", courts should "take as the 'nerve center' the place of actual direction, control, and coordination[.]" *Id*. at 97.

Here, in denying Boeing's principal place of business is in Chicago, plaintiffs liken this case to *Safeco Ins. Co. of Am. v. UnitedHealth Group, Inc.*, No. 13-0732-RSM, 2013 WL 3814387 (W.D. Wash. July 22, 2013).  In that case, this Court concluded Seattle remained the nerve center for Safeco Corporation even after it became a subsidiary of Liberty Mutual Insurance, a Boston corporation.  *Id*. at *1-2.  Plaintiffs stress the significance of BCA in relation to Boeing, noting, *inter alia*, the amount of revenue generated by BCA in Washington and the number of senior executives and employees in this State, as compared to the small number of employees and few Executive Council and board members based in Chicago.  They argue Boeing fosters the public perception its headquarters remain in Seattle and engages in manipulation, as evidenced by public statements and representations in court filings.  Plaintiffs also argue named defendant BCA itself triggers the 28 U.S.C. § 1441(b)(2) "resident defendant rule."

The Court, for the reasons set forth below, finds plaintiffs' arguments lack merit.  The Court further finds Boeing meets its burden of establishing its principal place of business is in Chicago, and its entitlement to removal based on diversity of citizenship.

A.      Boeing's Nerve Center

In *Safeco Ins. Co. of Am.*, 2013 WL 3814387 at *1-2, Safeco Corporation ("Safeco"), a Seattle-based holding corporation for various Safeco entities and affiliates, had become a separately incorporated subsidiary of the Boston-based Liberty Mutual Insurance corporation. However, Safeco maintained its headquarters in Seattle, as evidenced by statements on its website,

language in a public announcement by its president, and in dozens of press releases, and had no office of its own in Boston. *Id*. at *5-6. Safeco also "consistently contended in pleadings and affidavits in courts throughout the country that it is a Washington company." *Id*. at *5. The evidence further showed the majority of Safeco executives identified as operating out of Boston were also considered part of the corporate or executive management team of Liberty Mutual, while the significant number of executives and employees identified by defendants served exclusively as officers of Safeco in Seattle, and the only member of Liberty Mutual's "leadership team" listed on Safeco's website was located in Seattle. *Id*. at *6. Taken together, the evidence supported the identification of Seattle as the place from which Safeco's high-level officers controlled, coordinated, and directed Safeco's activities.

The facts in current matter are clearly distinguishable. BCA is not a separately incorporated subsidiary of Boeing. Boeing's corporate headquarters are in Chicago, as reflected on its website, in its corporate bylaws, in its federal and state public filings, in the maintenance of its corporate books and records at that location, and in the location of its shareholders meetings. (Dkt. 22, ¶¶4-10.) Boeing's press releases and news articles identify Chicago as Boeing's "center" and location of its corporate headquarters.[3]

The evidence does not support a depiction of Chicago as simply an office where Boeing holds its board meetings. Boeing attests it bases numerous high-level corporate executives in Chicago, where they provide enterprise-wide direction and services to Boeing's business units.

---

[3] Boeing cites to the following: https://boeing.mediaroom.com/2001-05-10-Boeing-Chooses-Chicago-as-Center-of-New-Corporate-Architecture; https://boeing.mediaroom.com/2001-09-04-Boeing-Begins-World-Headquarters-Operations-in-Chicago; https://www.kiro7.com/news/local/on-this-day-boeing-moves-corporate-headquarters-to-chicago-in-2001/827067193/. (*See also supra* n. 1 and Dkt. 22, ¶23, ns. 14-15.)

REPORT AND RECOMMENDATION
PAGE - 8

For example, Calhoun, Boeing's President and CEO, is based in Chicago and leads Boeing's Executive Council, the members of which include the leaders of BCA, BDS, and BGS, each of whom report directly to and are accountable to Calhoun. (Dkt. 22, ¶15.a.)  Likewise, Boeing's CFO, General Counsel, and Senior Vice Presidents of Human Resources, Communications, and Office of Internal Governance and Administration are based in Chicago, while the corresponding executives specific to the three business units report to and are directly accountable to the Chicago executives.  (*Id*., ¶¶15.b-f.; *see also id*., ¶¶15.g-k. (also stating Boeing's Controller, Treasurer, Chief Privacy Officer, and Vice President of Investor Relations are based in Chicago).)  Unlike Calhoun, the respective Presidents and CEOs of BCA, BDS, and BGS have no authority or control over any other unit.  (*Id*., ¶21.)  This evidence supports the conclusion the corporate office in Chicago directs, controls, and coordinates the activities of Boeing as a whole.

The mere fact Calhoun and Boeing's General Counsel maintain personal residences in other states does not mean they work or are professionally based in those states. *Cf. 3123 SMB LLC v. Horn*, 880 F.3d 461, 468-70 (9th Cir. 2018) (rejecting, with respect to a holding company, "[a] rule that forces courts to pick a nerve center from the potentially several states where corporate decision-makers reside" given that it ignores that a principal place of business is a single place and would provide for a shifting of the location over time, depending on where individuals happen to reside at the time of a suit).  Nor do the Washington residences of numerous BCA executives and several Executive Council members support the conclusion Seattle is Boeing's actual nerve center. It is axiomatic that BCA – based in Washington and one of three Boeing business units – would be the home to and workplace of a significant number of BCA executives.  Moreover, the executives based in Washington are located in both Renton and Seattle, not a "single place within a State", such as the executives in Chicago.  *Hertz Corp.*, 559 U.S. at 93.  Finally, while plaintiffs

REPORT AND RECOMMENDATION
PAGE - 9

posit in their reply that the Court's inquiry should focus on Boeing's Board of Directors, and not on either individual executives or the Executive Council, they do not proffer evidence that focus would support finding any location other than Chicago as Boeing's nerve center.[4]

Plaintiffs further fail to identify public statements contradictory to Boeing's current position. They point to a declaration filed in Illinois district court as purporting to foster the public perception of Seattle as Boeing's nerve center given the location of its executives, leadership team, and sales, engineering, and other groups, when, in fact, the declaration clearly, specifically, and repeatedly identifies that location in relation to BCA, not Boeing. (Dkt. 18, Ex. B (filed in *Timaero v. Boeing*, No. 19-8234 (N.D. Ill. Feb. 5, 2020)).) As set forth in the associated motion, Boeing conceded the Northern District of Illinois was a "proper venue because Boeing is headquartered in Chicago," but argued the district was not a convenient forum given the Washington location of all witnesses and evidence for the dispute over the purchase agreement for 737 MAX airplanes. (*Id*. at 1, 8 ("While Boeing's corporate headquarters are in Chicago, its Commercial Airlines business division – whose personnel are responsible for overseeing all aspects of the 737 MAX – is headquartered in Washington.")) Plaintiffs also point to a 2005 change in the Chicago office

---

[4] Plaintiffs, for example, assert an absence of evidence Chicago serves as more than a mail drop for the Board and a lack of clarity as to whether Board meetings are actually held in Chicago, without pointing to evidence Board meetings are held elsewhere. Plaintiffs also misplace their reliance on the Third Circuit's decision in *Johnson v. Smithkline Beecham Corp.*, 724 F.3d 337, 356 n.21, 357 (3d Cir. 2013), as finding the activities of a corporation's board, not its officers, determinative in establishing citizenship. The holding corporation at issue in *Johnson*, with a "sole function . . . to hold assets", is clearly distinguishable from Boeing. *Id*. at 356, n.21. In *Johnson*, the question was where the corporate activity at issue – the holding of assets – was "controlled and directed" and, when the "evidence suggests that the board of directors actually controlled that activity," *Hertz* did not require the Court to "ignore that fact and look instead to the location of certain corporate officers." *Id*. The Court found the nerve center of the holding company was in Wilmington, Delaware, the location of board meetings, because, although board members were based in three different locations and the board received support services from those locales, "the board controlled the company's core activities through decision-making at board meetings located in Delaware." *Id*.

name from "Boeing World Headquarters" to "Corporate offices" as supporting the conclusion Chicago is not Boeing's nerve center. *See* https://www.chicagobusiness.com/article/20060301/ NEWS01/200019694/chicago-no-longer-boeing-s-world-headquarters.  Yet, as stated in the cited article, this was largely a "street-level signage" change: "Nobody will be moving or losing their jobs. The Boeing logo atop 100 N. Riverside is not coming down." *Id*.  It also occurred by decision of a then new President and CEO who felt "'World headquarters' had a loftier sound'" than appropriate, with the intent to communicate "'we're all in this together[,] [n]one of us is above another[,]'" and reflecting his "'very pragmatic and down to earth[]'" nature. *Id*.  It was not a public statement contrary to Boeing's identification of its nerve center in Chicago and did not provide for a perception Boeing's actual nerve center is in Seattle.

Nor do plaintiffs identify evidence of either the type of jurisdictional manipulation discussed in *Hertz*, such as an alleged nerve center that is "nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat," 559 U.S. at 93, 97, or the inconsistent court activity in *Safeco*.  The evidence shows Boeing's Chicago headquarters is its nerve center, as has been recognized by courts.  *See Medina v. Boeing Company*, C20-0304, 2020 WL 1812522 at *3 (C.D. Cal. Apr. 9, 2020) (finding "Boeing's principal place of business is in Chicago, Illinois."); *Allen v. Boeing Co.*, C14-0596-RSM, 2015 WL 4773580 at *1, 3 (W.D. Wash. Aug. 13, 2015) (recognizing Boeing is "domiciled in Illinois").

The cases identified by plaintiff are not reasonably construed as reflecting manipulation. In *In re September 11th Litig.*, 494 F. Supp. 2d 232, 241 (S.D.N.Y. 2007), the Court considered "Washington, where Boeing maintains its principal place of business" to be one state with an interest in the choice of law to be applied.  However, in this pre-*Hertz* case, Boeing argued that, although its "headquarters had moved to Illinois one week before the September 11 attacks," its

REPORT AND RECOMMENDATION
PAGE - 11

headquarters and principal place of business had been in Washington at the time of the alleged wrongful conduct, that is, when the aircraft at issue had been designed, assembled, and delivered. *In re September 11th Litig*., 2007 WL 1646410 at *III.B.2. & n.7 (S.D.N.Y. Apr. 30, 2007).  In *Apsley v. Boeing Co*., No. 05–1368, 2008 WL 191418 at *3 (D. Kan. Jan. 22, 2008), the Court stated: "Boeing asserts that Seattle, Washington is its principal place of business and location of the witness; thus, the deposition should take place in Seattle."  Boeing's argument occurred within the context of its motion to quash a deposition scheduled to take place in Wichita, Kansas and to set the deposition in Seattle, the location of the deponent.  This case also predated adoption of the nerve center test in *Hertz* and took place in a circuit applying a "total activity" approach to the determination of a principal place of business.  *See Amoco Rocmount Co. v. Anschutz Corp.*, 7 F.3d 909, 915 (10th Cir. 1993) ("consider[ing] a variety of factors, such as the location of the corporation's nerve center, administrative offices, production facilities, employees, etc., and . . . balanc[ing] these factors in light of the facts of each case.")

    Boeing shows it has consistently invoked diversity jurisdiction to remove cases from Washington state court to the Western District of Washington by arguing its principal place of business is in Illinois (*see* Dkt. 23, ¶4 & Table 1); based removal of cases from Illinois state court to the Northern District of Illinois on grounds other than complete diversity of citizenship, such as admiralty jurisdiction and other federal jurisdictional statutes (*id*., ¶6 & Table 2); and otherwise, as in *Timaero*, sought to dismiss or transfer cases from Illinois based on *forum non conveniens* and factors of convenience, not by arguing its principal place of business was anywhere but Chicago (*id*., ¶7 & Table 3).  In contrast, within a single month of contending in this Court that Massachusetts served as its principal place of business, Safeco had identified Washington as its principal place of business in four separate cases filed or proceeding in other courts.  *Safeco Ins.*

*Co. of Am.*, 2013 WL 3814387 at *2.

Plaintiffs fail to apply the proper test for determining Boeing's principal place of business by focusing on factors such as size or number of Boeing facilities, executives, and employees in Washington, and the amount of production and revenue generated by Boeing in this State. Their approach reflects application of the "general business activities test" rejected in *Hertz*, not the nerve center test, which looks to a corporation's center of overall direction, control, and coordination, and does not require a court "to try to weigh corporate functions, assets, or revenues different in kind, one from the other." *Hertz*, 559 U.S. at 96. Plaintiffs also note the 737 MAX airplanes at issue in this case were launched, designed, built, and sold in Washington, as well as their belief all involved executives are based in Seattle. However, while pertinent to venue and considerations of convenience, these factors do not alter the position of Chicago as Boeing's nerve center.

Finally, whether or not the public continues to associate Boeing with Seattle, *Hertz* provides for the identification of a nerve center that is in some cases different from the public's perception. 559 U.S. at 96 ("For example, if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York.") In this case, application of the nerve center test shows Boeing's center of overall direction, control, and coordination is in Chicago. *Id*. This matter is therefore not subject to remand in relation to defendant Boeing.

B.  <u>BCA as a Separate Resident Defendant</u>

Plaintiffs also contend BCA, separate and apart from Boeing, precludes removal to this Court in triggering the resident defendant rule of 28 U.S.C. § 1441(b)(2). They point to the fact BCA has its own President and CEO, slate of senior executives, and headquarters, all based in

REPORT AND RECOMMENDATION
PAGE - 13

Washington, and depict the identification of BCA as a mere "division" rather than "subsidiary" as no more than a corporate nicety. However, both the facts and law preclude plaintiffs' position.

Boeing attests and provides evidence supporting its contention BCA is one of three unincorporated business divisions, not a separately incorporated subsidiary of Boeing. (*See* Dkt. 22, ¶¶4, 16, 20.) Plaintiffs do not provide evidence to the contrary. *Cf. Safeco Ins. Co. of Am.*, 2013 WL 3814387 at *6 ("Importantly, '[f]or diversity purposes, a parent and its subsidiary are treated as separate entities with separate principal places of business.'") (citations omitted).

Pursuant to Ninth Circuit law, an unincorporated division of a corporation "'is not an independent entity for jurisdictional purposes.'" *Breitman v. May Co. Cal.*, 37 F.3d 562, 564 (9th Cir. 1994) (quoting *Schwartz v. Electronic Data Systems, Inc.*, 913 F.2d 279, 284 (6th Cir. 1990)). Contrary to plaintiffs' suggestion, this law is both consistent with *Hertz* and remains binding. *See, e.g.*, *L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 939 (C.D. Cal. 2011) ("Ninth Circuit precedent holds that, unlike a legally incorporated subsidiary, an unincorporated division of a corporation does not possess the formal separateness required and is therefore not an independent entity for jurisdictional purposes.") (citing *Breitman*, 37 F.3d at 564). (*See also* Dkt. 21 at 17 (listing cases in support of assertion every district court in the Ninth Circuit has continued to apply *Breitman* post-*Hertz*).) It has been applied to Boeing in a case involving the BDS division. *Medina*, 2020 WL 1812522 at *2 ("Regardless, '[a] division of a corporation does not possess the formal separateness upon which the general rule is based, and thus is not an independent entity for jurisdictional purposes.' Thus, Boeing's citizenship is based not on the principal place of business of the 'Defense, Space and Security' unit, but of the corporation as a whole.") (internal citations to *Breitman*, 37 F.3d at 564, and *L'Garde, Inc.*, 805 F. Supp. 2d at 939). As defendants argue, to find otherwise would be contrary to the holding in *Hertz* that a corporation's nerve center lies in a

REPORT AND RECOMMENDATION
PAGE - 14

single place, as well as the underlying rationale for adopting a uniform approach to provide for "administrative simplicity" and predictability. *Hertz*, 559 U.S. at 93-95. *See Spitzer v. Lincoln Nat. Life Ins. Co.*, C12-5910, 2013 WL 3878585 at *3 (E.D. Pa. July 29, 2013) ("If we were to accept Lincoln Life's position that each of its divisions maintains its own nerve center, its principal place of business would be interchangeable, depending on which of its divisions is implicated.") BCA's location in Washington does not, for these reasons, bar removal.

## CONCLUSION

Defendants show this matter was properly removed from state court. Accordingly, plaintiffs' Motion to Remand to State Court (Dkt. 17) should be DENIED.

## OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **June 26, 2020**.

DATED this 8th day of June, 2020.

/s/ Mary Alice Theiler
Mary Alice Theiler
United States Magistrate Judge